Okay, your honors, I'd like to reserve five minutes for rebuttal, if that's all right. It's all right. The clock is counting down. Okay. And then I'd just like to first inquire if the court would prefer me to focus on the timeliness issue or the merits issue. Well, I'd like you to first state your name for the record. Oh, yes, your honor. Sorry, this is only my second time. My name is Greg West, and I'm representing the plaintiff appellants in this case. And their name is Troy Lambert. All right.  You probably need to address it. Okay. Well, to initially address it, I want to point out first that there's two published opinions of this court that accepted 23-F petitions of motions to reconsideration months after the initial opinion. And both of them, contrary to the defendant's argument, affirmed the status quo. They both involved – and one involved the defendant losing, filing a motion for reconsideration, then successfully appealing. And then the other one involved a plaintiff in the same situation. So time was not raised in those two published decisions. Which cases were those? Pardon? What were the names of the cases? The names of that were Parra v. Basha, and that was a 2005 decision of this court. The other one was Parsons v. Ryan, and that was a 2014 published decision of this court. Okay, but nobody raised this, and it's presumably not jurisdictional. I agree. I'm just pointing out that it is the practice of the court in the past to accept this without commenting about the time. The more important thing here is that the motions panel, when they ran at leave, specifically raised the idea of whether this is – your petition is timely. So why is it timely? The most important case on this, I believe, is the decision of this court in Briggs in 2015. That involved a CAFA remand order, and the language in the CAFA remand provision is almost identical to the 23-F, which it says in order of the district court granting or denying a motion to remand. And here it's granting or denying a motion for class certification. And what that said is the time to appeal restarts when there is a timely motion for reconsideration. And it not only says that, it gives a lot of reasons why. First, it says it's –  Yes. Isn't the main question the timely part, i.e., the timely motion for reconsideration? Well, the motion was timely. Well, it was timely – I mean, it's peculiar. It was timely under the rules for reconsideration. Under Rule 59. But it was after the time that you would have had to file the petition. More than 14 days. Yes, that's true. We did ask within that time, and we would have had the court not given us a date to file the motion for reconsideration. We certainly would have. So one way to look at it is essentially – and when you asked, you also said something about what you were going to say, as I recall. In other words, when you asked to file the motion for reconsideration, you gave some sense of what you were going to say in this motion for reconsideration. Yeah, I think I did. So one way to look at it is essentially there was an oral motion, an adequate oral motion at that point. I think that's absolutely correct. And again, we would have moved immediately to the appeal stage if we did not have that opportunity before the 14 days were up. If the court had said, no, you can't file it, we would have gone forward immediately. Well, the district judge didn't say anything about when you had to file an appeal, right? No. What we did is, again, 10 days after the order, within the 14 days, we wanted to clarify when and where it was going to be allowed, because we were after the motion cutoff. So the district court very explicitly needed to give us leave, or we wouldn't have been able to, and we would have had to move immediately to the court. What do you mean you were after the motion cutoff? We were past the pretrial motion cutoff. Under Rule 16. Under a scheduling order? Yes. Scheduling order. I see. So we would have been unable to file a motion for reconsideration without asking first at that status conference. So there would have been, again, no way for us to proceed without asking the court. And if you had filed it at that time, rather than orally giving notice you were going to file it, it would have been timely. That's your position, right? I think that it was timely.  The motion for reconsideration was an order granting or denying class certification. We sought to certify a class in that order. The district court said no. We discussed Rule 23. Well, and the court said you can't call it that. You can't just change what it is by retitling it. Is this really your main argument, counsel? I believe it is the correct argument, because the literal text of Rule 23-F is an order granting or denying class certification. He'd already denied it. I mean, he not denied it, but he had de-certified it. Yeah. He de-certified it initially, and then he denied it. But besides which, if that was your position, then all you would get to litigate is the motion to reconsider. Well, then it would incorporate the prior reasoning. It wouldn't. I mean, ordinarily it doesn't. In other words, if you're not looking at it as a tolling, but instead as this motion being a motion to grant or deny certification, then all you're going to get to litigate is the denial of the motion to reconsider. That's not what you want. I think that that's a decent argument in the sense, but when I actually look at these decisions, like the prior two decisions I quoted. I'm not sure you want to be telling Judge Berzon that she's got a decent argument, counsel. Back up and take another run at that. I'm sorry. I'm sorry. This is — I have not done many appeals here. But having looked at both Parsons and Parra, those two cases I cited, those again were — Counsel, but those are before the rule was changed. Parra is before the rule was changed. Well, Parsons versus — Rule was amended in 2009. I believe the only change that I'm aware of was change it from 10 to 14, which wasn't actually much of a change because it went from business days to calendar days. But in the case of Parsons versus Ryan, that was 2014. And that, like other decisions, were appeal — 23-F appeals of reconsideration or filed afterwards, but both orders were discussed in the opinions. So I think that the court could make that view. But just in practice, what courts do is when there's a 23-F appeal of a motion for reconsideration, both orders are discussed. So that again is — Here's the problem I've got. As a former trial court judge, the fork in the road we're talking about, whether to certify or decertify, if it's a close question, it's a really big deal. And it can result — if we get it wrong, and sometimes trial courts do, sometimes I did, it's a really big waste of time and money for everybody. So if a judge says, well, this is a close call and you've made a good point, I might want to rethink that. Let's pause the action here. Go brief it. Do a good job. I'm going to give you the extra 10 days. What's wrong with that? Why wouldn't the judge have the discretion to do that, or why would an appellate court want to get in the way and require a real strict compliance with that deadline? There's not a statutory mandate here for this order. It seems to me the trial court judge has time to do that here. I really agree with that. And I think that what you just said is very much in accord with what the court said in Briggs, which is the district court's order denying consideration specified why. And even though we disagree with the conclusion, we are recognized and grateful for his assistance, his careful reconsideration order had provided. And so here's the counter argument. The Seventh Circuit doesn't think so, for example, and other courts don't think so because Rule 23 says 14 days. And the reason it says that is because, you know, in the meantime, it's a big pause that's been hit, a pause button that's been hit on the litigation. So why shouldn't we be concerned about the fact that the Rule 23 doesn't say, you know, or more time if the trial judge thinks so. It says 14 days. It does indeed say 14 days. But I think, again, the reasoning in Briggs is stronger. And it, again, involves a 10-day rule that it says is strict. But we nonetheless will allow that period to restart when there's a motion for reconsideration. But were the facts in Briggs that the motion – I don't know the answer to this – that the motion to reconsider was filed after the 10 days ran? Well, in our case, it ran before. I didn't ask that. I asked what was the truth. What happened in Briggs? In Briggs, they moved – I can't imagine they moved within 10 days for reconsideration and they filed the full motion. That's just – I've never seen that happen in district court. In fact, I can say that in the central district, you need to go through and meet – So you don't know. No, I do not know. So the answer to the question is you don't know. Yes. I don't know. Do you want to address the merits? Let's assume for a minute. Let's assume for a minute that we agree with you and it's timely. Okay. So where did the district judge go wrong in decertifying the class? There's two places. There's one very simple and initial basic error that it made in the decertification order, and that was a plaintiff who has the aggregate sales of a product that he alleges was unlawfully sold, fraudulently sold, dangerous, and subject to full refunds, who only has the revenue from the defendant that doesn't include the retailer's markup, does not have a valid damages model under California law. I agree with the district court that the retail prices that consumers paid is another valid measure, and in fact it's a preferable measure because it's bigger for the plaintiffs of it, but often it will not be available. In fact, in retail cases. So your ultimate position is essentially that at least you should get the wholesale price. Yes, exactly. Wholesale is very easy to obtain because that's what defendants get. They know how much they got from wholesalers. That makes a lot of sense. The only question being whether there is something about the class action nature of this that means that if – I mean I understand these people would never be able to proceed individually, but if they did they would be able to get more damages. They – well, I think that most class members, even if they were able to sue individually, they still are not going to know the exact retail price they paid if it's going back five or six years. They have a rough idea. That may be it. It would be a rare day. That may be it. It would be very unexceptional. That may be it. Yeah. Yeah. And, I mean, our client had a fairly good guess, and we have the MSRP, which is another way to go. And what our motion for reconsideration mostly was was telling – focusing on, first of all, that we could use the wholesale data and then also pointing out that if we must try to assess what these retail markups are, we have methods of doing so, and that is in the evidence. That is in the record. No, we didn't cite it in our opposition to decertification, but that wasn't our obligation. Our obligation was to show we had a damages model that could be proved classified, and we certainly did cite in our opposition to certification – our opposition to decertification the sales data. We had that sales data when we filed our initial motion. We cited back to that docket entry and gave them that number. So at all times, both the original certification order and at the decertification order, we had the wholesale data, and that is all that we really needed to have, in my view. What changed between the original certification order and the decertification order? Well, it was a different judge, and I think that, unfortunately, had something to do with it. And I can't specify anything else that changed. Well, the other thing that changed, I think, is that you had discovery – I mean, you may have had a plausible theory at the outset, but you said you were going to have the retail price, but it turned out the district judge thought on summary judgment, essentially. I mean, this was really a summary judgment, wasn't it? There was a lot of things that might have been more appropriate in a summary judgment motion in this class certification motion. For instance – No, I mean in the – Decertification. But it was after discovery closed. Yes. And I think that was really what the judge was focusing on. That at the outset, you had a plausible theory, but once discovery closed, he thinks you didn't have any way of actually proving this dollar amount. There is a statement – there are statements like that in the order, and I think that those statements are premised on a legal error, which is that the wholesale data is not – No, I understand that, but that's what changed. Yes. What changed was that the record was complete by that point. Yes, that is also correct. Okay. Why don't you save the balance of time for rebuttal? Let's hear from the other side. Thank you. Good morning, Your Honors. May it please the Court, Stephen Feldman of Houston Hennigan on behalf of Nutraceutical. Let me start out, please, by addressing the timeliness issue, and why don't I start with this Court's opinion in Briggs. Briggs was – they did file within the 10 days. That's correct, Judge Berzon. So I wanted to clarify the record. It was timely, and in fact – Well, it depends what timely means. I mean, this is a funny situation because it was a timely motion to reconsider according to the rules for unreconsideration, right? Well – pardon me. Well, it wasn't timely in the way that this Court held in Briggs. So this Court in Briggs took – Well, Briggs didn't really look at the question. It just said it was timely. And it looked at other things. It looked at the question of whether that then told, but it didn't really deal with the issue of whether a timely motion for reconsideration under these circumstances has to be within the 10 days or within the – or within Rule 59 or within some period sent by the district judge, which is what happened here. Well, what I would say is that at least indirectly it did. I think the Court in Briggs took pains repeatedly to say that it had to be a timely reconsideration motion. And it cited – But that doesn't answer what's timely. No, no. To your point, Judge Berzon, it cited and said its decision was consistent with the rule applied in other circuits. And then it cited the Eleventh Circuit's decision in Shinn and the Seventh Circuit's decision in Blair, both of which said that by timely filed it meant when a motion for reconsideration was filed within 10 days of the certification order. And it also cited the Supreme Court's decision in Healy in which it explicitly said it was not dealing with a situation where the time to petition for rehearing within the notice of appeal had lapsed. And so it wasn't dealing with an attempt to, quote, rejuvenate an extinguished right to appeal. And so I think the Court's decision in Briggs, if it wants to apply that to the 23F context here, it doesn't in any way help the appellant because it still renders it untimely under the Court's decision in Shinn and Blair and all the other cases to handle this. And I want to point out one other thing. He mentioned the PARA decision. Now, I think you rightly noted that that Court didn't actually address the timeliness issues. But what I would say is I went back and looked at the docket and the dates that the appellant provided were correct, August 31st and September 15th. But, in fact, it wasn't just the switch from 10 to 14 days that happened in 2009. It was a switch under 6A to not including weekends and holidays. And, actually, if you go and calculate it, and I did, the petition there, actually, if you count Labor Day, which was Monday, September 5th, was timely filed on the 10th day. There's not a single decision that has been cited in which anyone would find his motion timely. What do we do with the idea that, as Judge Berzon noted, that at the status conference here there was discussion about their desire to file a motion for reconsideration? Yes, Judge Pius. And there was some discussion about what he was going to do. Yes, Judge Pius. So I think it's important to clarify what happened at the status conference. I mean, the transcript is in the record. We do have a transcript. Yes. So the transcript is in the record. And what happened there was the appellant came in there and asked to file a motion for recertification. And the judge said he wasn't going to be able to do that. And we said, well, if he wants to file a motion for reconsideration, that's what he wants. And the judge said, well, it's your right under the local rules to file a motion for reconsideration. If you want to do that, go ahead. There was, in Local Rule 718, which was not adjusted in any way by any scheduling order, allows in the Central District of California for a motion for reconsideration to be filed at any time. And so the judge said, it's entirely your right to do so. If you want to do it, I'll give you a date. I thought he, in fact, gave him a deadline. Right. And so he said, when can you file it? And Mr. Weston said, I think I can do it in two to three weeks. And he said, okay, well, the latest you can file it is on or before March 12th. What's wrong with that, counsel? Why shouldn't the district court judge have the discretion to do that? Well, I think this goes to what the Gutierrez decision said in the Third Circuit. It said absolutely the district judge has the right to adjust his own docket or her own docket and change the deadline by which a reconsideration motion can be filed. But that cannot affect the notice, the right to appeal under 23-F. Why not? That's the point. But why not? 23-F isn't jurisdictional, so why not? Well, I think this – well, let me address that in two ways. First of all, I think that the reasoning behind not allowing a district judge to just adjust 23-F would mean the district judge would have to know what they were doing. And I think right here, when I say that, I mean the litigants need to explain to the judge what's happening. But, again, counsel, counsel, this has been nice for you because we give the district court judges a lot of discretion. We have a lot of respect for them doing their jobs and managing their dockets. And why would we want to take this tool away from them if they think they might have bobbled this kind of a serious decision tree issue? Why wouldn't we – why would we want to tie their hands and not let them go back and take another run at it? Well, my argument is that, essentially, this is to help the district judge. Right here at that status conference, Mr. Weston never mentioned 23-F, never mentioned any interlocutory appeal. There was no discussion of anything. It doesn't help anybody if the district court maybe got it wrong and wants a chance to take another look at it to make sure it's not going to come back on appeal and have the whole case come back because something was wrongfully decertified. You know, that's my point. Right. Okay. So if you just go through that hypothetical, I think you think it might help the district court judge, i.e., the district court judge wouldn't have to entertain a motion to reconsider. I'll give you that. But if we have a conscientious district court judge, and I think we certainly do here, who wants to take another look at this to make sure it got it right, why would we want to take away that discretion? This is not jurisdictional. Well, I think the problem comes from the sort of – in each specific instance it might make sense to do that. But the overall consequence, I think, is what the court – what Judge Easterbrook's concern was in the case in the Seventh Circuit, the Gary case, which is it essentially renders that 14-day window null. Every district judge in every court could maintain their own time period by which a 23F interlocutory appeal could be filed. And all of a sudden the mandatory and strict 14-day window becomes whatever a district judge wants to do. I completely agree that a district judge may have good reasons for why they want to expand the time for a reconsideration motion to be filed. But I think it's incumbent upon the party who is asking for that expanded period of time to tell the judge. You keep vacillating between what happened in this case and the bright-line rule you want us to adopt. The bright-line rule you want us to adopt is that the district court didn't have the discretion to give them more time to say, I want to take this. And then you slip into, in this case, a different argument, which is that in this case you think he didn't do that. Well, I think both the district judge did not do that here. Judge Barat, just like us, had to. Why should he not be able to? That's a different question. Well, and I think that's what I was trying to explain. I think the consequences of that decision are poor. You end up with different, all of a sudden 14 days becomes whatever any district  And I think that inconsistency is a problem. Why wasn't this discussion at the status conference, was it a status conference? Yes, Your Honor. Enough to be the motion? Well, I think there was no question at the status conference that Mr. Weston said he was going to file the motion for reconsideration on it before he marched. Right, but he said why, and the district judge said okay. And wouldn't it make more, I mean, if he never raised it, it would be different. But he did raise it. He did get permission, essentially, to expand it in writing. And why shouldn't he be able to do that? Well, Judge Berzon, I don't think that's a fair characterization of what happened at the status conference. I think at the status conference what happened is I'm having trouble finding the transcript because it doesn't It's in Do you know where it is? I can look it up for you. I mean, I had a sense of what happened there, but I haven't actually read it. And I'm not finding it easily in the excerpts. ER 30, I believe, Your Honor. ER 30, I see. Okay. So I don't believe at the status conference there was any discussion about him making an oral motion that would be followed up in writing. It was if he wanted to file a motion for reconsideration, he could do it on or before a date certain, which he eventually did file. And that was out of time within 20-F, 23-F. Again, there's not a single case that would find this petition to be timely. But that's a funny thing to say because there is no specific provision for a motion for reconsideration of this particular order. There's no rule about that, this particular petition. There is no rule that says you have to file a motion to reconsider this kind of an order within a certain time period. That's correct, Judge Berzon. So the rule itself You're trying to make a rule that isn't there. No, Judge Berzon, what I think is that the rule itself obviously says you need to file an interlocutory appeal within 14 days of an order granting or denying certification. But I have a question about that. Actually, it doesn't say you're filing an interlocutory appeal. What it says is you're filing a petition for permission to appeal. Correct, Judge Berzon. Right? Yes. It's not the appeal. Is there later a notice of appeal? Pardon me? How does this operate, in fact? I just don't know, and I should know. After we grant permission, is there then a notice of appeal filed? No. I believe the way it works at the circuit, from my recollection from clerking here and just from this case, is that the petition to appeal is filed, and once it's accepted, that petition is then heard. There's not a separate notice of appeal filed. Correct, Judge Pius. So, again, I think that if this Court wanted to apply what it did in Briggs, which is to say in 23-F we're going to allow a timely motion for reconsideration to tell the time period, I think that's a logical decision. It doesn't help the appellant here. And, again, this Court in Briggs cited the Shin case and the Blair case as being consistent with its opinion in Briggs and the Healy case. Could the circuit extend the time period? Well, the time period of 23-F? Yeah. Suppose it came to the circuit and said, please extend the time to file a petition for leave to appeal by 30 days because I'm going to file a motion for reconsideration in the district court. Would we have the authority to extend it? I don't think so. Why not? Well, I think the Court, well, 23-F, which is promulgated by the Supreme Court and then goes through a process and ultimately becomes a rule, I think this Court has the power to exercise its equitable powers. And, for example, there's the Doctrine of Unique Circumstances, which has been discussed otherwise, which essentially says — Yeah, and one question is why doesn't this come within that? Okay, well — Where the district judge specifically, I mean, certainly gave him the impression that that would be a timely motion to reconsideration, even though you're saying it wasn't a timely motion to reconsideration. Well, I think there's — the Gutierrez Court in the Third Circuit addressed this exact question, Judge Berzon, which is to say it can be timely within the district court's judge-owned docket for filing that motion for reconsideration. That does not make it timely under 23-F within that 14-day notice of appeal. And every single circuit that considered this issue has denied appeals in this exact situation, right? The Carpenter decision, the New Court decision, the Gutierrez decision, they all denied them as untimely. And I think that is what the right decision would be here. I'm still interested in whether or not — what is a lawyer to do in this situation if they want to file a motion to reconsider and they don't believe they have enough time, 14 days? Well, Judge Paez, I think all Mr. Weston had to do, if 23-F was even on his mind, and we have no idea if it was, all you have to do, and this is what appellants have done in many of these other cases in which the courts have ruled on this, is to say file it within that window. In the Briggs case, they had filed it within that window. In the Schind case, they had filed it within that window. Or they just filed something hastily. Well — Just a skeleton. A caseholder? I don't think that 14 days was in order to file a motion for reconsideration, which, again, should be rare. A motion for reconsideration is not just a motion that should be filed any time, right? I mean, this is a motion that was going to be newly presented evidence. And, in fact, Judge Barat here found that virtually every argument he's making was waived because it wasn't actually made in consideration. Talk a little bit about the merits, please. Yes. Yes, Judge Brazant. Why isn't his basic proposition, simple proposition, correct, which is at a minimum the damages are the wholesale price? Well, the problem is — It's a reasonable approximation. Well, I don't think it comes to a reasonable approximation. So in Comcast, the Supreme Court said that a model purporting to serve as evidence of damages in a class action has to measure only those damages attributable to that theory. And I think this court in Leyva talked about how the petitioners there had put forward enough evidence, including payroll evidence and the like, from which a party could — the court could feasibly and efficiently calculate what those damages are. Here, discovery is closed, and we simply don't have that. The only evidence at all to get to a full refund model is to show what the plaintiff's out-of-pocket costs are. And the damages are at least that. The damages are at most that. Under the California Supreme Court's decision in Korea's supply, restitution is limited to the plaintiff's ownership interest. It's not allowed to get discouragement of profits. And so when you talk about a wholesale price — But the plaintiffs — the plaintiffs paid at least the wholesale price. I don't think that's true, Judge Brazant. There's absolutely no evidence in the record that — Is there an approximation that they paid at least the wholesale price, that there wasn't massive numbers of — or even any substantial number of retailers that were going to sell for under the wholesale price? There's no evidence in the record that, for example, Nutraceutical wasn't, for example, selling the product at a wholesale price of $30, and that customers weren't paying $20 because they were marking it down, which is something retailers routinely do. And so I think there's no debate. I mean, in Appellant's brief, there's an attempt to say this is about Judge Barat requiring precise calculations of individualized damages. That's not the case. Judge Barat isn't requiring precise calculations. We're not arguing for that. To Judge Pius's point, we're talking about how do we get to a way to feasibly and efficiently calculate, as Comcast said, only damages attributable to a full refund theory. And the only way to do that that we know of here is the average retail price. At the certification stage, that's what was talked about. In his opposition to the motion for decertify, he said he was going to have the average retail price was the way to do it. That's what Judge Collins has said. He never did it. What about the recent JustFilm decision, which seems to say that the need to individualize, which says, relying on an earlier case, that Yokohama, I think, or something like that, that the need to individualize damages isn't a basis for recertification? Well, a couple of points about the JustFilm decision, Your Honor. One is that the JustFilm decision came down at an earlier stage. This was at the certification stage. And the court made clear it was dealing with that early stage. Here we're talking about after discovery is closed. We're about to go into trial, and there's no evidence at all from which a judge or jury could do anything but speculate about whether or not the numbers in the record actually bore any relation directly to the plaintiff's out-of-pocket costs. And Korea Supply, the California Supreme Court, said that's the cap, plaintiff's ownership interest. And so what we're talking about is getting disgorgement of profits. I mean, it seems like an awfully stringent requirement for damages in the sense that, I mean, we have the wholesale price. We have the suggested retail price, right? We have the actual retail price paid by at least a few people. Do we have that as well? We have one person who doesn't even remember in his deposition what he paid. Okay. So you think it's not a pretty good guess that the average retail price has something to do with the wholesale price and the suggested retail price? Well, I come back to the point that I don't... Maybe off by, I mean, what is the range there? How much is the range of difference that we're talking about? Well, that's the problem, Judge Brezon. We just don't know because appellant never put it in the record. We went through all of discovery. This is not a high burden. Plaintiffs in many other cases I've seen do this routinely. It's not that hard. You can get an expert, but you don't even need to. You can get spins data. You can get all sorts of ways to do this. And Judge Collins told them how to do it. They said they were going to do it, and they just never did. I mean, and I go back to Comcast. It says you have to have a model purporting the evidence of damages has to measure only those damages attributable to the theory. And they just don't have a way of measuring what the damages attributable to out-of-pocket costs are. There is no way to know whether if you use the wholesale price, for example, you're going to end up discharging a significant amount of profits. Instead, the ultimate remedy was a submission remedy that says that anybody who comes forward with what they actually paid will get damages. I mean, that would be sort of the model, I think, that Just Film was talking about. What's wrong with that? Well, I don't think that's permissible under Comcast. I think Comcast, because Comcast says your actual model, you need to have evidence that the damages are only going to be those. But the model is that people are going to get back what they paid. And Just Film and its predecessors say you can have individualized damages, and that's how you would do it. You just say, all right, the remedy is anybody who comes in with their receipt can get paid. Well, I think it's the plaintiff's burden, and this is the implication at least, if not directly from this Court's decision in Leyva, is that the plaintiffs do have to have a way, even at the certification stage, which is their burden, to feasibly and efficiently calculate damages. It's not a high bar. It doesn't need to be precise. We're not holding their feet to the fire and requiring great detail. But they have to have some way to do it. And in Leyva, this Court took the time carefully to explain that the payroll prices would allow them to do it. And in Just Film, again, the Court actually took the time to explain that they had put forward evidence from which you could calculate those damages. So I think there's a distinct difference there. Okay. Thank you. Thank you, Your Honors. I believe you had less than two minutes. We'll take a break. Yeah. Well, I hope to speak very quickly. The civil minutes is on ER 131. I think what you judges said about placeholders makes a lot of sense. We were told we had leave 10 days into the 14 days. We could have, at that point, rushed out a one, probably offended the judge at least a little bit. You know, he tells us I'm going to reconsider this order, gives us a date to file the motion. We rush out one. We waste the time of this Court by filing a placeholder motion. We waste their time opposing it. And then when the final order comes out, we amend that order. We withdraw it. Maybe they want to oppose it now. There's no real use of such a placeholder order. You mean motion? Motion. I'm sorry, a placeholder petition under 23-F. Thank you. Okay. And then the second point is this is a case over $174,000. That was their revenue in California over multiple years in the class period. If we were required to try to hire experts and engage in extensive expert discovery over retail margins at stores distributed all over California, the case would have not been economical. $174,000 is not a lot. So $174,000 is, at minimum, what they profited from an illegal act. If we prove our case at trial, we know that they at least gained $174,000 in illegal sales, and that $174,000 should be distributed to the class. Even class members who might have bought it on sale, they get a tiny windfall of $1 or $2 above what they paid. That doesn't mean that's permitted under California law, which allows approximations. Okay. Thank you, Your Honors. Thank you, Counsel. Before we hear the next case, which is Galea, we're going to take a break for 10 minutes.
judges: Paez, Berzon, Christen